# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
*By DReese at 9:54 am, Aug 21, 2018*

In re:                                    )
                                          )
                                          )          Chapter 13
                                          )
WILLIAM B. SPINKS,                        )
                                          )          Number 17-41579-EJC
          *Debtor.*                       )
                                          )

## OPINION ON OBJECTION OF ORLANDO A. MONTOYA TO CONFIRMATION OF PLAN

Before the Court is the objection (dckt. 36) filed by *pro se* creditor Orlando A. Montoya ("Montoya") to confirmation of the Chapter 13 plan (dckt. 4) filed by William B. Spinks (the "Debtor"). This is the Debtor's second Chapter 13 case. In the Debtor's first case, filed on April 2, 2015, Montoya claimed priority treatment for unpaid wages pursuant to 11 U.S.C. § 507(a)(4), which requires such wages to have been earned within 180 days prior to the bankruptcy filing or to the debtor's cessation of operations. Before the Debtor completed payments under the plan, his 2015 case was dismissed on October 10, 2017. Ten days later, on October 20, 2017, the Debtor filed a second Chapter 13 case, in which Montoya was unable to claim priority treatment for the remaining unpaid wages because they were not earned within the 180-day "lookback" period. Montoya contends that this lookback period should be equitably tolled for the pendency of the Debtor's first bankruptcy case to allow his claim as a priority wage claim. For the reasons set forth below, the Court will overrule Montoya's objection.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1).

## II. FINDINGS OF FACT

The facts in this case are not in dispute. From March 18, 2014, to January 8, 2015, Montoya worked for the Debtor as a tour guide.[1] When Montoya's employment ended, the Debtor owed him a total of $1,125.00 in unpaid wages for the months of October, November, and December of 2014.[2] Montoya sued the Debtor in magistrate court, but his collection efforts were interrupted when, on April 2, 2015, the Debtor filed a Chapter 13 petition (2015 dckt. 1), commencing Case No. 15-40495-MJK (the "first case"). On May 7, 2015, Montoya filed a proof of claim in the amount of $1,125.00, consisting of $1,072.50 for which he claimed priority treatment pursuant to 11 U.S.C. § 507(a)(4) and $52.50 in nonpriority wages.[3] (2015 Claim 7-1).

---

[1] At the hearing held on March 27, 2018, Montoya was unable to state with certainty whether he worked for the Debtor individually or for the Debtor's company, The Savannah Walks, Inc. He could not recall whether the Debtor ever paid him in the form of a personal check or ever sent him a W-2 or Form 1099. In any event, the Debtor's counsel represented that the Debtor would not object to Montoya's claim on the grounds that the wages were owed by an entity other than the Debtor.

[2] According to Montoya, he quit on January 8, 2015. (Dckt. 36, p. 1). He does not explain why he is not owed wages for the first eight days of January.

[3] Montoya testified at the March 27, 2018 hearing that he arrived at these figures by counting backward 180 days from April 2, 2015, the date the petition was filed in the first case. This calculation results in a date of October 4, 2014, as the cutoff date for the 180-day lookback

2

The Court entered an order confirming the Debtor's Chapter 13 plan on January 8, 2016. (2015 Dckt. 62). On October 10, 2017, the first case was dismissed (2015 dckt. 90) because the Debtor defaulted[4] under the terms of a consent order (2015 dckt. 87) entered on July 31, 2017.[5] According to the Chapter 13 Standing Trustee's Final Report and Account (2015 dckt. 92), Montoya received a total of $199.36 in the Debtor's first case. Before Montoya could resume his state court remedies to collect the remaining $925.64, the Debtor filed a second Chapter 13 petition (dckt. 1) on October 20, 2017, commencing Case No. 17-41579-EJC (the "second case").[6] That same day, the Debtor filed a Chapter 13 plan, pursuant to which all § 507 claims would be paid in full over the life of the plan. (Dckt. 4). The plan, however, does not treat Montoya's claim as a priority claim. As amended, the Debtor's plan proposes to pay general unsecured creditors with allowed claims a minimum total of $19,219.00, resulting in a dividend of approximately 75%. (Dckt. 45).

On December 1, 2017, Montoya filed a proof of claim in the second case in the amount of $925.64. (Claim 2-1). Attached to the proof of claim, which was filed on an

---

period in the first case.

[4] According to the Debtor's counsel, the Debtor defaulted in his payments to the Chapter 13 Trustee as a result of a health issue and of the hurricanes in 2016 and 2017, which interrupted his tour guide business. (Dckt. 7, p. 2).

[5] Pursuant to the consent order, the Debtor was required to make monthly payments to the Chapter 13 Trustee in the amount of $585.00 beginning in August of 2017, with payments made under strict compliance for a period of eighteen months from entry of the consent order. (2015 Dckt. 87, pp. 1-2).

[6] Because the Debtor's first case was dismissed within one year before his second case was filed, the automatic stay ordinarily would have terminated on the thirtieth day after the filing of the second case. 11 U.S.C. § 362(c)(3)(A). On October 20, 2017, however, the Debtor moved to extend the stay under § 362(c)(3)(B). (Dckt. 7). No objections were filed, and the Court granted the Debtor's motion on November 7, 2017. (Dckt. 19).

outdated form, were a series of emails between Montoya and the Debtor, a document entitled "Disbursement History by Claim ID" listing the disbursements to Montoya in the first case, and a letter from Montoya to the Court. (Claim 2-1, pp. 3-11). Pursuant to a deficiency notice entered that same day, Montoya was directed to file an amended proof of claim on a current form. (Dckt. 25). On December 13, 2017, Montoya filed an amended proof of claim on Official Form 410. (Claim 2-2). Question 12 on this form asks whether all or part of the claim is entitled to priority under 11 U.S.C. § 507(a). Montoya, however, did not check the box for priority treatment because his unpaid wages were not earned within 180 days before the *second* case, and he did not want to make a false statement on the form under penalty of perjury.[7]

On February 9, 2018, Montoya filed the instant objection to confirmation (dckt. 36) on the basis that the Debtor's Chapter 13 plan "reduces [Montoya's] wage claim to a non-priority status for no reason other than the Debtor's failure to comply with this court's order in the 2015 bankruptcy and Debtor's subsequent filing of another bankruptcy in 2017." *Id.* at p. 2. Montoya requests that the Court equitably toll the 180-day lookback period of § 507(a)(4) to accord priority status to $873.14 of his wage claim. *Id.* At a continued confirmation hearing on March 27, 2018, the Court heard testimony and argument from Montoya. Laura Grifka, counsel for the Chapter 13 Trustee, stated that the Chapter 13 Trustee does not believe Montoya's claim is entitled to priority status. The Debtor's counsel

---

[7] Counting back 180 days from October 20, 2017, results in a date of April 23, 2017, as the cutoff date for the 180-day lookback period in the second case. Montoya performed no work for the Debtor during this lookback period.

represented that the Debtor would not object to Montoya's claim as a priority. At the conclusion of the hearing, the Court took the matter under advisement.

On May 2, 2018, a consent order on confirmation, which contained the following provision, was entered:

> The Objection Of Orlando A. Montoya to Confirmation of Plan, pro se creditor, as to the treatment of his timely filed claim, Court's Claim No. 2, is taken under advisement by the Judge for ruling. Said claim shall be treated and paid through the Chapter 13 Plan pursuant to the findings set forth in the Order of the Court. If necessary, the Plan payment shall increase to pay the claim per the Order.

(Dckt. 48, p. 1). On May 31, 2018, the Court entered an order confirming the Debtor's plan. (Dckt. 51).

## III. CONCLUSIONS OF LAW

The sole issue before the Court is whether to equitably toll the 180-day lookback period of 11 U.S.C. § 507(a)(4). Section 507(a) of the Bankruptcy Code "sets forth 10 categories of claims that are entitled to be paid ahead of a debtor's general body of unsecured creditors." *In re Norwalk Furniture Corp.*, 418 B.R. 631, 634 (Bankr. N.D. Ohio 2009). "These categories of priority claims reflect the Congressional determination that, while equality of distribution is a major goal of the Bankruptcy Code, certain categories of claims deserve to be paid over other claims." *Id.* Here, Montoya claims priority status, in the form of his objection to confirmation, pursuant to the fourth category of priority claims as set forth in § 507(a)(4), which provides in pertinent part:

(a) The following expenses and claims have priority in the following order:

. . .

(4) Fourth, allowed unsecured claims, but only to the extent of $12,850

5

> for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for–
>
> > (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual . . . .

11 U.S.C. § 507(a)(4)(A). "Pursuant to section 507(a)(4), an employee generally 'earns' wages at the time that the services are performed or the entitlement to the benefits vests, regardless of when the payment is made." *In re Golden Gate Cmty. Health*, 577 B.R. 567, 570 (Bankr. N.D. Cal. 2017) (citing *In re Idearc Inc.*, 442 B.R. 513 (Bankr. N.D. Tex. 2010)).

If Montoya's unpaid wages are entitled to priority status, then his claim must be paid in full over the life of the Debtor's Chapter 13 plan. *See* 11 U.S.C. § 1322(a)(2) ("[t]he plan . . . shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title . . . ."). The problem for Montoya is that his unpaid wages were not earned within 180 days before October 20, 2017, the date the Debtor filed the petition in the second case.[8] Thus, under the plain language of § 507(a)(4), Montoya's claim is not entitled to priority status.

As Montoya points out, however, the automatic stay provisions of 11 U.S.C. § 362(a) prohibited him from pursuing any collection efforts against the Debtor between the filing of the Debtor's petition in the first case on April 2, 2015, and the dismissal of that case on October 10, 2017. Accordingly, Montoya requests that the Court equitably toll the 180-

---

[8] There is no indication that the Debtor's business has ceased operations, and thus the petition date is the relevant date for calculating the 180-day lookback period.

day lookback period for the pendency of the Debtor's first bankruptcy case. "The doctrine of equitable tolling applies to periods of limitation in appropriate circumstances. It permits a court to suspend the measuring period for a party to take action during the time the party was unable to act."[9] *Tidewater Fin. Co. v. Williams (In re Williams)*, 333 B.R. 68 (Bankr. D. Md. 2005). In other words, Montoya contends that the period from April 2, 2015, through October 10, 2017, should not count against the 180-day lookback period. If the Court equitably tolls this period, then a portion of Montoya's wages, which *were* earned within 180 days before the *first* case, would still be entitled to priority status in the second case.

This appears to be a matter of first impression, as Montoya does not cite, and the Court has not found, any cases in which a bankruptcy court addressed the issue of equitable tolling in the context of the 180-day lookback period of a § 507(a)(4) wage claim.[10]

---

[9] For example, courts have equitably tolled the limitations periods set forth in § 546(a)(1) and § 549(d). *Gugino v. Turner (In re Clark)*, No. 12-00649-TLM, Adv. No. 15-06007-TLM, 2015 WL 5545258, at *4 (Bankr. D. Idaho Sept. 18, 2015) (citing *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc. v. Ernst & Young)*, 14 F.3d 1380, 1384-85 (9th Cir. 1994)). Courts have also equitably tolled the time for filing a complaint under § 523(c) as set forth in Federal Rule of Bankruptcy Procedure 4007(c). *Blackstone Fin. Grp. Bus. Trust v. Myler (In re Myler)*, 477 B.R. 227, 234 (Bankr. D. Utah 2012).

[10] Some antiquated cases, however, addressed an analogous issue. Section 64(b)(5) of the Bankruptcy Act (the predecessor of § 507(a)(4)) granted priority status to "wages due to workmen, clerks, traveling or city salesmen, or servants, which have been earned within three months before the date of the commencement of the proceeding, not to exceed $600 to each claimant." *Manly v. Hood*, 37 F.2d 212, 213 (4th Cir. 1930). In *Manly*, the wages were not earned within the three-month lookback period, but the Fourth Circuit held that the term "the commencement of the proceeding" encompassed "the commencement of proceedings in insolvency resulting in bankruptcy." *Id.* at 214. The Fourth Circuit reasoned that Congress knew bankruptcy often followed insolvency proceedings, and thus it was "unreasonable to think that in such case Congress could have intended to deny priority to wage claimants, who had been delayed in the collection of their claims by the insolvency proceedings." *Id.* Thus, the creditors, whose wages were earned within three months before the insolvency proceeding, received priority status. *Id.* at 213. This decision was criticized by the Second Circuit and the Third Circuit. *See Warner v. Kagan (In re Ko-Ed Tavern)*, 129 F.2d 806, 810 (3d Cir. 1942)

Numerous courts, however, have addressed equitable tolling in connection with priority tax claims under § 507(a)(8), and these cases may assist the Court in resolving the present issue. Thus, the Court will briefly survey the history of equitable tolling of priority tax claims.

Section 507(a)(8) provides in pertinent part:

(a) The following expenses and claims have priority in the following order:

. . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for –

(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition –

(i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition . . .

11 U.S.C. § 507(a)(8)(A)(i). In other words, unpaid income taxes are entitled to priority status so long as the tax returns were due less than three years before the date the bankruptcy petition was filed. Further, § 523(a)(1)(A) renders such priority tax debts nondischargeable, stating:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

---

("The 'proceeding' contemplated by the Act is the bankruptcy proceeding, and the date of the commencement thereof is not determined by a possibly earlier insolvency or by a prior state court proceeding in such connection."); *Strom v. Peikes*, 123 F.2d 1003, 1004-05 (2d Cir. 1941) ("To inject a date prior to bankruptcy is to confuse the bankruptcy estate with an earlier estate, such as that in the hands of an assignee. Displacement of a state insolvency proceeding by a bankruptcy proceeding has as part of its purpose the substitution of the bankruptcy rules of distribution."). *See also In re Lansdale Transp. Co., Inc.*, 11 B.R. 78 (Bankr. E.D. Pa. 1981) (following *Ko-Ed Tavern* and rejecting *Manly* in case where debtor transferred all its assets to creditors' committee two years before filing bankruptcy).

8

(1) for a tax or a customs duty—

> (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed . . . .

11 U.S.C. § 523(a)(1)(A).

Prior to the seminal case of *Young v. United States*, 535 U.S. 43 (2002), several bankruptcy courts equitably tolled the three-year lookback period of § 507(a)(8)(A)(i).[11] *See Bair v. United States (In re Bair)*, 240 B.R. 247 (Bankr. W.D. Tex. 1999); *Blakely v. United States (In re Blakely)*, 219 B.R. 722 (Bankr. S.D. Miss. 1998); *Daniel v. United States (In re Daniel)*, 227 B.R. 675 (Bankr. N.D. Ind. 1998). Courts, however, disagreed as to which section of the Bankruptcy Code authorizes equitable tolling. Some courts relied on 11 U.S.C. § 108(c), which provides as follows:

> (c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> >
> > (2) 30 days after notice of the termination or expiration of the stay under

---

[11] Some courts also applied equitable tolling to § 507(a)(8)(A)(ii), which gives priority status to a claim for a tax measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition if the tax was assessed within 240 days of the filing of the petition. 11 U.S.C. § 507(a)(8)(A)(ii). *See West v. United States (In re West)*, 5 F.3d 423 (9th Cir. 1993); *Collins v. United States (In re Collins)*, 223 B.R. 372 (Bankr. M.D. Fla. 1997). *But see In re Little*, 216 B.R. 769, 772 (Bankr. E.D.N.C. 1997) (declining to equitably toll the 240-day lookback period).

section 362, 922, 1201, or 1301 of this title, as the case may be, with
respect to such claim.

11 U.S.C. § 108(c). This section "extends the statute of limitations for creditors in actions

against the debtor, where the creditor is hampered from proceeding outside the bankruptcy

court due to the [automatic stay] provisions of 11 U.S.C. § 362." *In re Taylor*, 81 F.3d 20,

23 (3d Cir. 1996) (quoting *Brickley v. United States (In re Brickley)*, 70 B.R. 113, 115

(B.A.P. 9th Cir. 1986)). Courts finding authority to equitably toll pursuant to § 108(c) read

this section in conjunction with a provision of the Internal Revenue Code, 26 U.S.C. § 6503,

which states in relevant part:

> **(b) Assets of taxpayer in control or custody of court.**--The period of
> limitations on collection after assessment prescribed in section 6502 shall be
> suspended for the period the assets of the taxpayer are in the control or custody
> of the court in any proceeding before any court of the United States or of any
> State or of the District of Columbia, and for 6 months thereafter.
>
> . . .
>
> **(h) Cases under title 11 of the United States Code.**--The running of the period
> of limitations provided in section 6501 or 6502 on the making of assessments or
> collection shall, in a case under title 11 of the United States Code, be suspended
> for the period during which the Secretary is prohibited by reason of such case
> from making the assessment or from collecting and--
>
>> **(1)** for assessment, 60 days thereafter, and
>>
>> **(2)** for collection, 6 months thereafter.

26 U.S.C. § 6503 (emphasis in original). Courts following this approach acknowledged that

the plain language of § 108(c) indicates that it applies only to nonbankruptcy law and thus

is inapplicable to the lookback period of § 507(a)(8)(A)(i). *Waugh v. Internal Revenue*

*Service (In re Waugh)*, 109 F.3d 489, 493 (8th Cir. 1997). Nevertheless, "[t]hese decisions

rationalized that the combination of § 108(c) of the Bankruptcy Code and § 6503 of the Tax Code showed an intent on the part of Congress to not 'allow a taxpayer to escape liability by protecting his assets in a bankruptcy proceeding until the statute of limitations expired.'" *Putnam v. Internal Revenue Service (In re Putnam)*, 503 B.R. 656, 661 (Bankr. E.D.N.C. 2014) (quoting *Teeslink v. United States (In re Teeslink)*, 165 B.R. 708, 712 (Bankr. S.D. Ga. 1994)).[12]

Other courts, however, found authority for equitable tolling pursuant to 11 U.S.C. § 105(a), which provides as follows:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Concluding that a bankruptcy court "has the equitable powers under Section 105(a) to toll the three year time limitation of Section 507(a)(8) in appropriate cases," these courts would then "consider the facts and the relative positions of the parties in determining whether to exercise these equitable powers." *In re Offshore Diving & Salvaging, Inc.*, 242 B.R. 897, 901 (Bankr. E.D. La. 1999).

In 1999, the Eleventh Circuit addressed in *Morgan v. United States (In re Morgan)*, 182 F.3d 775 (11th Cir. 1999), "whether the priority period of § 507(a)(8)(A)(i)

---

[12] In *Putnam*, the court held that the two-year lookback period of § 523(a)(1)(B)(ii) was equitably tolled during the pendency of the debtor's prior bankruptcy cases. *Putnam*, 503 B.R. at 666. In *Teeslink*, Judge Dalis held that "[w]hile §§ 507(a)(7)(A)(i)-(iii) or § 523(a)(1)(B)(ii) are not statute of limitations per se, they have the same practical effect" and thus are subject to equitable tolling pursuant to § 108(c). *Teeslink*, 165 B.R. at 712-13.

may be tolled during a prior bankruptcy proceeding in the absence of explicit language in applicable statutes permitting such tolling." *Id.* at 778. In *Morgan*, the debtors filed a Chapter 13 case in August of 1990, and the Internal Revenue Service ("IRS") filed a proof of claim for unpaid income taxes for the years 1987, 1988, and 1989. *Id.* at 776. The debtors' plan proposed to pay this priority claim in full, but their case was dismissed in October of 1994 when they failed to make plan payments, and the IRS claim was not satisfied before dismissal. *Id.* at 776-77. In January of 1995, the debtors filed a second Chapter 13 case. *Id.* at 777. When the IRS again filed a proof of claim for the 1987, 1988, and 1989 income taxes, the debtors objected to the priority status of the claims on the basis that these taxes were due prior to the three-year lookback period. *Id.* The bankruptcy court tolled the lookback period for the pendency of the debtors' first case, and the district court affirmed. *Id.*

The Eleventh Circuit recognized that apart from the Fifth Circuit, every circuit to have addressed the issue had concluded that the three-year lookback period could be equitably tolled. *Id.* at 778. A majority of those circuits relied on 11 U.S.C. § 108(c) in conjunction with 26 U.S.C. § 6503(b). *Id.* at 778-79. The Eleventh Circuit, however, disagreed. "[T]he plain language of 108(c) . . . states that it only applies to 'nonbankruptcy law' and 'nonbankruptcy proceedings'" and therefore § 108(c) cannot apply to § 507(a)(8)(A)(i). *Id.* at 779. Instead, the Eleventh Circuit concluded that "11 U.S.C. § 105(a) is broad enough to permit a bankruptcy court, exercising its equitable powers, to toll the three-year priority period, where appropriate, during the pendency of a debtor's prior bankruptcy proceeding." *Id.* Because "the applicability and use of § 105(a) is a decision that

is typically left to the bankruptcy court," the Eleventh Circuit remanded the case. *Id.* at 780.

In 2002, the United States Supreme Court finally addressed the issue of whether the three-year lookback period of § 507(a)(8)(A)(i)[13] is tolled during the pendency of a previous bankruptcy case. *Young v. United States*, 535 U.S. 43 (2002). In *Young*, the debtors' 1992 income tax return was due on October 15, 1993. *Id.* at 44-45. The debtors filed a Chapter 13 petition on May 1, 1996. *Id.* at 45. On March 12, 1997, one day before the bankruptcy court dismissed their Chapter 13 case, the debtors filed a second case under Chapter 7. *Id.* On June 17, 1997, the debtors received a discharge in the second case. *Id.* When the IRS subsequently demanded payment of the 1992 tax debt, the debtors sought to have their Chapter 7 case reopened and their debt to the IRS declared discharged. *Id.* The debtors argued that their tax return was due more than three years before they filed their Chapter 7 petition, and thus the debt had been discharged. *Id.* The bankruptcy court reopened the case but equitably tolled the three-year lookback period, which decision was affirmed by the district court and the First Circuit Court of Appeals. *Id.* at 45-46.

The Supreme Court held that "[t]he three-year lookback period is a limitations period subject to traditional principles of equitable tolling" and that "[s]ince nothing in the Bankruptcy Code precludes equitable tolling of the lookback period . . . the courts below properly excluded from the three-year limitation the period during which the [debtors']

---

[13] As noted above, § 523(a)(1)(A) renders priority tax debts under § 507(a)(8)(A)(i) nondischargeable, and both sections contain the same three-year lookback period. Thus, although the dispute in *Young* concerned the dischargeability of the tax debt, the Supreme Court held "that the lookback period of 11 U.S.C. § 507(a)(8)(A)(i) is tolled during the pendency of a prior bankruptcy petition." *Young*, 535 U.S. at 54.

Chapter 13 petition was pending." *Id.* at 47. As the Supreme Court stated:

> The terms of the lookback period appear to create a loophole: Since the Code does not prohibit back-to-back Chapter 13 and Chapter 7 filings . . . a debtor can render a tax debt dischargeable by first filing a Chapter 13 petition, then voluntarily dismissing the petition when the lookback period for the debt has lapsed, and finally refiling under Chapter 7. During the pendency of the Chapter 13 petition, the automatic stay of § 362(a) will prevent the IRS from taking steps to collect the unpaid taxes, and if the Chapter 7 petition is filed after the lookback period has expired, the taxes remaining due will be dischargeable. Petitioners took advantage of this loophole, which, they believe, is permitted by the Bankruptcy Code.
>
> We disagree.

*Young*, 535 U.S. at 46-47.

In reaching this conclusion, the Supreme Court explained that the three-year lookback period of § 507(a)(8)(A)(i) "is a limitations period because it prescribes a period within which certain rights (namely, priority and nondischargeability in bankruptcy) may be enforced." *Id.* at 47. Tax claims arising before the lookback period become dischargeable, and therefore the lookback period incentivizes the IRS to protect its rights by collecting the debt. *Id.* Thus, "the lookback period serves the same 'basic policies [furthered by] all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities.'" *Id.* (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).

According to the Supreme Court, "[i]t is hornbook law that limitations periods are customarily subject to equitable tolling," and that "Congress must be presumed to draft limitations periods in light of this background principle." *Id.* at 49. This principle is particularly applicable in the bankruptcy context because bankruptcy courts are courts of

equity. *Id.* at 50. Accordingly, the three-year lookback period of § 507(a)(8)(A)(i) "is tolled during the pendency of a prior bankruptcy petition." *Id.* at 54. And this is true regardless of whether the debtor filed the second bankruptcy case "in good faith or solely to run down the lookback period." *Id.* at 50. The debtor's intentions are irrelevant in this analysis. *Id.*

By focusing on "traditional principles of equitable tolling," the Supreme Court in *Young* did not resolve the dispute among lower courts as to whether § 108(c)(1) contains a tolling provision. *Id.* at 47, 52. Even if § 108(c)(1) did authorize tolling, Justice Scalia stated that the Court "would draw no negative inference from the presence of an express tolling provision in § 108(c)(1) and the absence of one in § 507." *Id.* at 52. In other words, Congress simply "assum[ed] that bankruptcy courts will use their inherent equitable powers to toll the federal limitations periods within the Code." *Id.*

Following *Young*, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005, Congress added an unnumbered paragraph after § 507(a)(8)(G), sometimes called the "Suspension Paragraph."[14] *In re Montgomery*, 446 B.R. 475, 480 (Bankr. D. Kan. 2011). This paragraph "both codified and expanded the rule of *Young.*" *Id.* It provides as follows:

> An otherwise applicable time period specified in this paragraph shall be suspended for any period during which a governmental unit is prohibited under

---

[14] Congress also added § 507(a)(8)(A)(ii)(II) in 2005 in response to *Young. In re Neff,* 505 B.R. 255, 263 n. 7 (B.A.P. 9th Cir. 2014). This subsection provides for the suspension of the 240-day period of § 507(a)(8)(A)(ii) for "any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days . . . ." § 507(a)(8)(A)(ii)(II). This language is duplicative of the language contained in the Suspension Paragraph. 4 Collier on Bankruptcy, ¶ 507.11[9] (16th ed.) (suggesting that the identical language of these two provisions should not "be viewed as doubling the time periods provided").

applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal from any collection action taken or proposed against the debtor, plus 90 days; *plus any time during which the stay of proceedings was in effect in a prior case under this title* or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.

11 U.S.C. § 507(a)(8)(G) (Suspension Paragraph) (emphasis added). "In accord with the holding in *Young*, the paragraph expressly provides for tolling of the lookback period" and "adds 90 days to the suspension period."[15] *Montgomery*, 446 B.R. at 480.

Returning to the question of whether the Court may equitably toll the 180-day lookback period applicable to Montoya's wage claim under § 507(a)(4), the principles set forth in *Young* offer some guidance. The Bankruptcy Code contains numerous deadlines and lookback periods, not all of which are subject to equitable tolling. *See Hingiss v. MMCC Fin. Corp.*, 463 B.R. 877, 881-83 (E.D. Wis. 2011) ("*Young* does not hold that all lookback periods are statutes of limitation; it holds only that one particular lookback period is a statute of limitations–the three-year lookback period [of § 507(a)(8)(A)(i)]."). For example, several courts have held that the 910-day period set forth in the hanging paragraph of § 1325(a) is not subject to equitable tolling. *Hingiss*, 463 B.R. at 881; *In re Maas*, 416 B.R. 767, 770 (Bankr. D. Kan. 2009); *In re Murphy*, 375 B.R. 919, 921 n.4 (Bankr. M.D. Ga. 2007)

---

[15] There is no equivalent suspension provision for priority wage claims pursuant to § 507(a)(4). It might be argued that the Suspension Paragraph, an express tolling provision in § 507(a)(8), demonstrates Congress's intent *not* to toll the lookback period in § 507(a)(4). In *Young*, however, the Supreme Court rejected a similar argument involving the express tolling provision of § 507(a)(8)(A)(ii)(I), which suspends the 240-day lookback period for any time plus 30 days "during which an offer in compromise with respect to that tax was pending or in effect." 11 U.S.C. § 507(a)(8)(A)(ii)(I). As the Supreme Court explained, this express tolling provision "*supplements* rather than displaces principles of equitable tolling." *Young*, 525 U.S. at 53 (emphasis in original).

(Walker, J.). In *Tidewater Fin. Co. v. Williams*, 498 F.3d 249 (4th Cir. 2007), the Fourth Circuit held that equitable tolling does not apply to § 727(a)(8), which provides that a debtor cannot receive a discharge if the debtor received a discharge under Chapter 7 or Chapter 11 in a previous case commenced within eight years before the current case. *Id.* at 254-58. Likewise, the Ninth Circuit has held that § 727(a)(2), which denies a discharge to a debtor who improperly transferred property within one year before filing the petition, is not subject to equitable tolling.[16] *DeNoce v. Neff (In re Neff)*, 824 F.3d 1181, 1187 (9th Cir. 2016).[17]

To determine whether a particular statutory period is subject to equitable tolling, courts look to *Young*, where the Supreme Court identified the attributes of limitations periods subject to equitable tolling. *See Tidewater*, 498 F.3d at 255; *Hingiss*, 463 B.R. at 882; *Maas*, 416 B.R. at 771. As set forth above, Justice Scalia stated in *Young* that a statutory period subject to equitable tolling "prescribes a period within which certain rights . . . may be enforced," thereby serving the policies of repose, elimination of stale claims, and

---

[16] *But see Womble v. Pher Partners (In re Womble)*, 299 B.R. 810 (N.D. Tex. 2003) (affirming bankruptcy court's determination that § 727(a)(2) *is* subject to equitable tolling). *Womble* was affirmed on other grounds. *Womble v. Pher Partners*, 108 F. App'x 993 (5th Cir. 2004).

[17] Further examples abound of statutory periods not subject to equitable tolling. Some courts decline to equitably toll the claims bar date. *In re Mackinder-Manous*, No. 13-21211, 2015 WL 790883, at *3 (Bankr. E.D. Ky. Feb. 24, 2015) (holding that "equitable tolling in the context of extending a claims bar date for a creditor without notice in chapter 13 is inconsistent with the text of § 502(b)(9) and related provisions of the Code"); *In re Day*, No. 07-13016-RGM, 2009 WL 3233160, at *2 (Bankr. E.D. Va. Sept. 30, 2009). Equitable tolling has been held inapplicable to the one-year period of § 727(e)(2). *French v. Kohlhorst (In re Kohlhorst)*, No. 08-3021, 2008 WL 2970391, at *3 (Bankr. N.D. Ohio July 28, 2008) (concluding that this period is more like a statute of repose than a statue of limitations). Some courts have held that § 547(b)(4)(B) is not subject to equitable tolling. *Jensen v. Eck (In re Steele)*, 352 B.R. 337, 339 (Bankr. M.D. Fla. 2006) (holding that this period "is essential and an integral part of the claim, and not subject to equitable tolling").

certainty. *Young*, 535 U.S. at 47. Similarly, as the Fourth Circuit explained in *Tidewater*:

> [A]ll statutory periods to which courts have applied equitable tolling principles[]
> contain these same two characteristics. First, they provide a plaintiff (in the
> bankruptcy context, a creditor) with a specified period of time within which the
> plaintiff must act to pursue a claim in order to preserve a remedy. . . . Second,
> such periods commence when the plaintiff has (or discovers that he has) a
> 'complete and present cause of action' . . . . When these two circumstances exist,
> a court will often toll a period if it concludes that equitable considerations
> excuse a plaintiff's failure to take the required action within the time period."

*Tidewater*, 498 F.3d at 255-56 (quoting *Young*, 535 U.S. at 48-49). Applying that reasoning

here, whether the 180-day lookback period of § 507(a)(4) is subject to equitable tolling

depends on whether it has the same attributes described in *Young* and *Tidewater*.

Unlike the three-year lookback period for taxes under § 507(a)(8)(A)(i), the

180-day lookback period for wages under § 507(a)(4) does not encourage a creditor to take

prompt action to enforce its rights. Section 507(a)(4), and its predecessor, § 507(a)(3),[18] "was

derived from § 64(a)(2) of the Bankruptcy Act, which granted priority only for wages earned

within 90 days before the commencement of the bankruptcy." *Boatwright v. Rau (In re Rau)*,

113 B.R. 619, 621 (B.A.P. 9th Cir. 1990). The provision "was intended for the benefit only

of those who are dependent upon their wages, and who, having lost their employment by the

bankruptcy, would be in need of such protection." *Id.* (quoting *Blessing v. Blanchard*, 223

F. 35, 37 (9th Cir. 1915)). "It 'was intended to favor those who could not be expected to

know anything of the credit of their employer, but must accept a job as it comes . . . .'" *Id.*

(quoting *In re Lawsam Elec. Co., Inc.*, 300 F. 736, 736 (S.D.N.Y. 1924) (Learned Hand, J.)).

---

[18] Prior to the enactment of BAPCPA, the wage priority provision was codified at 11
U.S.C. § 507(a)(3). *In re Ellipsat, Inc.*, 480 B.R. 1, 10 n. 11 (Bankr. D.D.C. 2012).

Thus, the history of § 507(a)(4) shows that it was intended to protect employees *after* a bankruptcy has commenced. There is nothing for an employee to do to enforce his rights during the 180-day lookback period that is comparable to the IRS's ability to collect unpaid taxes or to perfect a tax lien over a three-year period. The short nature of the 180-day lookback period for wages in comparison to the three-year period for taxes further supports this conclusion. Accordingly, pursuant to the principles set forth in *Young*, the Court finds that the 180-day lookback period of § 507(a)(4) is not subject to equitable tolling.

However, even if the 180-day lookback period is subject to equitable tolling under *Young*, the Court declines to equitably toll such period for the pendency of the Debtor's first bankruptcy case. "Equitable tolling is a rare remedy and [is] usually applied on a case-by-case basis."[19] *In re Maas*, 416 B.R. at 770. *See also Ross v. Camus (In re Camus)*, 386 B.R. 396, 398 (Bankr. D. Conn. 2008) ("Equitable tolling permits courts to extend a limitations period on a case-by-case basis to prevent inequity, even when such period would otherwise have expired."). "Equitable tolling should be applied sparingly." *In*

---

[19] Some courts interpret the Supreme Court's decision in *Young* as creating a *per se* rule that the three-year lookback period of § 507(a)(8)(A)(i) is equitably tolled during the pendency of a prior bankruptcy case. *See In re Brensing*, 337 B.R. 376, 387 (Bankr. D. Kan. 2006) ("This Court is unable to glean, and the debtors do not cite, specific language in the *Young* decision to require such a case-by-case analysis . . . ."); *Hartford v. The Internal Revenue Service (In re Hartford)*, No. 02-22247, AP 02-2187, 2003 WL 1559948, at *2 (Bankr. W.D.N.Y. March 24, 2003) ("[T]he rule that the three-year look-back period is tolled during the pendency of a prior bankruptcy case when a subsequent case is filed functions as a *per se* rule and is not dependent upon any actual equitable considerations that may be advanced . . . ."); *Womble*, 289 B.R. 836, 853 (Bankr. N.D. Tex. 2003) ("The Supreme Court indicated in *Young* that the motives underlying the previous filing and previous dismissal are immaterial, in which case tolling the one-year lookback period is appropriate per se."). The Court is not convinced that *Young* actually created a *per se* rule. But even if it did, such rule applies to priority tax claims, and the Court declines to apply it in the context of priority wage claims under § 507(a)(4).

*re Sasso*, 550 B.R. 550, 555 (Bankr. D.N.M. 2016). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way." *Akers v. Mattei (In re Dugger)*, Nos. SC-11-1052, 05-00024-LA7, 2012 WL 2086562, at *7 (B.A.P. 9th Cir. 2012) (quoting *Roberts v. Marshall*, 627 F.3d 768, 772 (9th Cir. 2010)). "Generally, equitable tolling is difficult to attain, as it is reserved for 'extraordinary or exceptional circumstances.'" *Lund v. Benoit (In re Lund)*, 330 B.R. 96, 102 (Bankr. D. Vt. 2004) (quoting *United States v. All Funds Distributed to Weiss*, 345 F.3d 49, 54 (2d Cir. 2003)).

Here, the Court finds that Montoya has failed to carry his burden. Although the Court has no reason to doubt that Montoya pursued his rights diligently by suing the Debtor in magistrate court, he fails to establish any extraordinary or exceptional circumstances. The relevant obstacle precluding Montoya's collection efforts was the automatic stay of § 362(a), which is "one of the fundamental debtor protections in the Bankruptcy Code . . . giv[ing] the debtor a 'breathing spell' from creditors and stop[ping] all collection efforts, all harassment, and all foreclosure actions." *In re Lopez*, 492 B.R. 595, 601 (Bankr. D.P.R. 2013). The Court does not find the operation of the automatic stay to be an extraordinary circumstance.

Further, "[a] proper exercise of the Court's equitable powers requires 'full development and examination of the facts and the relative positions of the parties.'" *Bair*, 240 B.R. at 252. Here, although a debtor's good faith or lack thereof is immaterial in § 507(a)(8)(A)(i) priority tax cases pursuant to *Young*, the Court notes that Montoya presented no evidence of any bad faith on the Debtor's part in filing back-to-back Chapter 13 petitions.

In seeking to extend the stay in the second case, the Debtor's counsel represented that the Debtor defaulted in the first case due to a health issue and to the hurricanes in 2016 and 2017, which affected his tour guide business. (Dckt. 7, p. 2). As to Montoya, he already received payments totaling $199.36 in the Debtor's first case. (2015 Dckt. 92). Moreover, the instant case is unusual in that the Debtor's Chapter 13 plan (dckt. 4) proposes to pay general unsecured creditors a dividend of approximately 75%. Most Chapter 13 debtors pay little or nothing to their general unsecured creditors, and thus even without priority status, Montoya is in a better position than most creditors. Thus, Montoya has not satisfied his burden of showing that the Court should exercise its equitable powers to toll the 180-day lookback period.

Montoya raises a novel argument concerning the Court's ability to equitably toll the 180-day lookback period for wage priority. However, there is no precedent under § 507(a)(4) for the relief he requests, and in any event he fails to establish that equitable tolling is appropriate in this case. Accordingly, the Court declines to equitably toll the 180-day lookback period. A separate order will be entered consistent with this Opinion.

Dated at Savannah, Georgia, this 21st day of August, 2018.

Edward J. Coleman, III, Chief Judge
United States Bankruptcy Court
Southern District of Georgia